IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KYMBERLEE GILSON,

    Plaintiff,

v.

MACY'S, INC. LONG TERM DISABILITY PLAN and PRUDENTIAL INSURANCE OF AMERICA,

    Defendants.

No. C 13-04520 WHA

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this ERISA action involving a claim for benefits, defendants move for summary judgment. There is a genuine issue of material fact, however, about what documents constitute the Plan document, and therefore what standard of review controls this action. For the reasons stated below, the motion is **DENIED**. Both sides will be allowed to engage in limited discovery regarding the Plan document and the alleged structural conflict of interest.

## STATEMENT

Plaintiff Kymberlee Gilson was employed as a sales clerk with Macy's Inc., in 2011, where she was occasionally required to reach above shoulder height to access displays and merchandise, as well as lifting, carrying, pushing, and pulling items that weighed up to 20

1  pounds (PRU126, 330, 694, 716).* As an employee, she was a beneficiary of defendant Macy's
2  Inc. Long Term Disability Plan (the "LTD Plan"), which provided long-term disability benefits
3  for eligible employees. Defendant Prudential Insurance Company of America was the claims
4  administrator for the LTD Plan (PRU071). Relevant to this action, an eligible employee was
5  considered disabled when the employee was unable to perform material and substantive duties of
6  her regular occupation due to sickness, the employee was under the regular care of a doctor, and
7  the employee had a 20% of more loss in her monthly earnings due to that sickness of injury
8  (PRU011, 076). In addition, the eligible employee must have been "continuously disabled"
9  through the 180-day elimination period, which was a period of continuous disability that needed
10 to be satisfied before benefits are granted (PRU013, 078).

### A. INJURY AND TREATMENT.

On April 30, 2011, plaintiff claims she tripped over her dog and fell down half a flight of stairs, hitting her shoulder and knocking out her two front teeth (PRU404–05). She stopped working that day (PRU747). On May 18, 2011, a MRI of plaintiff's right shoulder at Kaiser Foundation Hospital indicated that plaintiff suffered from "partial tears [of the rotator cuff]. . . [but no] full-thickness rotator cuff tear," fracture, or disclocation (PRU159–160). Plaintiff returned to Kaiser for pain treatment on June 30 and July 1 (PRU435; PRU437). On August 11, she was diagnosed with adhesive capsulitis of the shoulder "due to [the] fall," which is a condition characterized by stiffness and pain in the shoulder joint (PRU439). A few months later on October 6, plaintiff reported that her shoulder was "getting much better" and she felt ready to return to work (PRU441). Once she was released back to work and returned to Macy's, however, she was unable to work due to pain in her shoulder. Plaintiff returned to see her doctor at Kaiser on November 15, who treated the pain (PRU144–45). Plaintiff continued to see a doctor for treatment of her shoulder on December 20, and was eventually referred for surgery for subacromial decompression on February 7, 2012 (PRU147–151).

---

*The full Bates numbering for the documents contained in the administrative record is PRU 77212-000330-000XXX. The citations in this order refer to the last three digits of the Bates labels.

Plaintiff lost her health benefits through Macy's due to her inability to work on May 7, 2012, and accordingly did not receive her scheduled surgery through Kaiser (PRU300). After three months of non-treatment, she began to receive health benefits through the County on May 29 (PRU200–26). At the May 29 check-up, plaintiff requested a disability form from physician's assistant Lulu Garcia. While Garcia noted that she needed to review the records from Kaiser, she provided plaintiff with the disability note certifying an inability to work (PRU752). After two months of physical therapy at Queen of the Valley medical center, plaintiff was referred to an orthopedic surgeon on July 23 (PRU278–81).

On August 15, plaintiff underwent a second MRI. In addition to the rotator cuff tear, the MRI indicated that plaintiff suffered from mild atrophy of the rotator cuff muscles, some degenerative changes to the acromioclavicular joint, and a small cyst near the humerus (PRU334). Plaintiff was evaluated on August 30, 2012, by Doctor John Burton. Burton recommended a right shoulder arthroscopy, which is a minor surgery (PRU189). After a pre-operation visit on October 30, Burton completed the procedure on November 2 (PRU286–87). In a follow-up meeting, Burton instructed plaintiff to avoid lifting, stretching, and gripping for two months (PRU289). Plaintiff engaged in post-surgery physical therapy from November 12, to March 2013, when she would continue with a home program (PRU228–234).

Plaintiff returned to part-time work on February 1, 2013, with plans to return to full-time work on July 2013 (PRU818). The administrative record ends in May 2013.

**2.    CLAIM FOR BENEFITS REVIEW.**

**A.    Initial Review.**

Plaintiff filed a claim for benefits on August 8, 2012 (PRU698–702). On September 5, Nurse Judy Gillis began to review plaintiff's claim and supporting information. During this initial review, Gillis attempted to contact plaintiff's family practitioner, Dr. Jennifer Wilson, for additional information, but Wilson did not respond (PRU713). Plaintiff was informed of the inability to contact Wilson (PRU799). On September 19, Gillis wrote to Garcia, the County physician's assistant treating plaintiff at the time, and requested information (PRU194). In particular, while Gillis wrote that "[t]he purpose of this letter is . . . not to influence your clinical

3

care," she noted that Garcia had provided plaintiff with a disability note. Afterwards, Gillis incorrectly informed Garcia that plaintiff had not received treatment for seven months prior to being treated by Garcia (PRU194–95). In fact, plaintiff had not received treatment for only three months after she lost her health benefits through Macy's (PRU300). Gillis opined that plaintiff only had self-reported symptoms, and therefore no objective basis, to support Garcia's diagnosis of disability (PRU753). Her opinion is based on the records sent by Garcia, plaintiff's May 2011 MRI that showed only a partial rotator cuff tear, evidence of improvement, and the fact that she was temporarily released back to work in October 2011 (PRU753–54). Her conclusion was that plaintiff only had reasonable restrictions, including no lifting of items that were greater than 20 pounds, from April 29, 2011 through the week of October 6, 2011. After October 6, Gillis concluded that plaintiff had no restrictions or limitations (PRU754). Gillis reviewed additional medical records submitted by plaintiff on September 10 and 21, but did not change her ultimate conclusions (PRU736, 741–42, 746).

On October 9, 2012, vocational rehabilitation specialist Meredith Tardif evaluated plaintiff's occupation as a sales clerk and determined that the occupation required occasional above-shoulder movement of 11-20 pounds occasionally and 10 pounds frequently (PRU730). On October 15, physical therapist Kathleen Pattis reviewed plaintiff's medical files to conclude that plaintiff successfully treated her shoulder condition by October 6, 2011, and was able to work by then (PRU726). Pattis was unsure whether plaintiff's condition deteriorated between October 6, 2011, and July 2012, so she recommended an external file review (PRU727). Prudential referred the claim to external reviewer Dr. David Bauer, who is an orthopedic surgeon (PRU321–26). After reviewing plaintiff's medical records, Bauer concluded that plaintiff did not suffer from decreased capacity after October 6, 2011 (PRU325).

After considering the reports by Gillis, Pattis, Tardif, and Bauer (the only external reviewer), Prudential denied plaintiff's claim for long-term disability benefits (PRU807–10). In particular, Prudential concluded that plaintiff could return to work on October 7, 2011, with no restrictions or limitations (PRU808). Thus, plaintiff was not continuously impaired through her 180-day "elimination period," which ran until October 27, 2011, as required by the LTD Plan,

4

and was therefore not eligible for benefits. Moreover, Prudential held that plaintiff's failure to return to work on October 7 was not justified because her self-reported pain was "out of proportion to the clinical findings" and that "no objective evidence [supported] requiring restrictions that would prevent [her] from performing [her] job functions" as a sales clerk at Macy's (PRU808).

### B.   FIRST APPEAL.

On January 28, 2013, plaintiff appealed Prudential's denial of long-term disability benefits, arguing that (1) she was approved for state-disability benefits, (2) her family practitioners, including Dr. Currie-Johnson from Kaiser, Dr. Jennifer Wilson, and Dr. Colleen Townsend, certified that she was disabled, and (3) her functional capacity was significantly reduced after she attempted to return to work in November 2011 (PRU296–97). In addition, plaintiff submitted additional medical records to support her claim.

As part of the appeal review, an additional external orthopedic surgeon, Doctor Spyros Panos, reviewed plaintiff's medical records on March 12, 2013 (PRU126–36). Panos found that plaintiff qualified for several restrictions from work, including lifting and carrying 10 pounds frequently and 25 pounds occasionally, from April 30, 2011, to November 1, 2012 (PRU129). Moreover, Panos found that plaintiff had no work capacity from November 2, 2012, through November 30 due to her shoulder surgery (PRU129). After November 30, however, Panos held that plaintiff could have returned to work with some restrictions and could have worked without any limitations by December 16 (PRU136). Panos recognized that plaintiff's treating providers, Doctor Johnson, Doctor Disston, and physician assistant Garcia, extended plaintiff's out-of-work time from October 20, 2011, through surgery on November 2, and that Doctor Wilson had signed an attending physician statement certifying plaintiff's disability (PRU131). Panos argued, however, that their conclusion that plaintiff was disabled was not supported by her medical record.

After Prudential received Panos' report, it referred plaintiff's file to an additional internal vocational rehabilitation counselor Francis Grunden (PRU714). Grunden concluded that

plaintiff's occupation as a sales clerk could accommodate the limitations identified by Panos (PRU706, 713, 818).

Based on the reports by Panos and Grunden, Prudential upheld its decision to deny plaintiff's claim for long-term disability benefits April 24, 2013 (PRU816–20). Among other reasons, Prudential found that plaintiff's restrictions, such as lifting and carrying 10 pounds frequently and 25 pounds occasionally, did not preclude her from working as a sales clerk, except for the brief period after her November 2012 surgery (PRU818). Accordingly, Prudential ruled that plaintiff did not have the type of restrictions or limitations that prevented her from performing "material and substantive duties" of her regular occupation through the 180-day elimination period.

### C. SECOND APPEAL.

On May 1, 2013, plaintiff appealed Prudential's denial of long-term benefits a second time (PRU120–22). While plaintiff did not provide any additional information as part of the second appeal, she argued in particular that Prudential erred in failing to examining her in person and relying on their own reviewing physicians' opinions than those of her treating physicians (PRU120). On May 20, 2012, Prudential upheld its decision to deny plaintiff's claim for long-term disability benefits (PRU821–24).

On September 30, 2013, plaintiff filed the instant action, seeking "benefits due under the Plan according to proof" under ERISA (Compl. at 3). This order follows full briefing and oral argument.

### ANALYSIS

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c). A dispute is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, and "material" only if the fact may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "In considering a motion for summary judgment, the court may not weigh the evidence or make

credibility determinations, and is required to draw all inferences in a light most favorable to the nonmoving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

### 1. ERISA STANDARD OF REVIEW.

As a threshold matter, the applicable standard of review must be determined. "[A] denial of benefits [claim pursuant to Section 502(a)(1)(B)] 'is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Burke v. Pitney Bowes Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1023 (9th Cir. 2008) (citations omitted). The presumption of *de novo* review can be overcome only when the plan administrator satisfies its burden that the plan unambiguously gives it discretionary authority. *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1107 (9th Cir. 2000). If the administrator satisfies that burden, the Court's review is for abuse of discretion. In that instance, the standard of review is "arbitrary and capricious," meaning "the administrator's decision cannot be disturbed if it is reasonable." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 675 (9th Cir. 2011).

#### A. Plan Document.

The parties disagree about what standard of review applies. This disagreement is resolved by determining what documents constitute the LTD Plan document. According to defendants, the LTD Plan document is comprised of the Group Insurance Contract, Certificate of Coverage, Claims and Appeals Section, and Summary Plan Document (SPD) (Reply Br. at 3). In reply, plaintiff argues that only the Group Insurance Contract and Certificate of Coverage constitute the LTD Plan document and those two documents do not unambiguously give Prudential discretionary authority.

ERISA does not require a single plan document and the plan document may incorporate other formal or informal documents. *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1503 (9th Cir. 1985); *accord Gonzales v. Unum Life Ins. Co. of Am.*, 861 F. Supp. 2d 1099, 1107–08 (S.D. Cal. 2012) (Judge Anthony Battaglia) (collecting cases). Rather, an ERISA plan exists even without a formal plan if "from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving

7

United States District Court
For the Northern District of California

benefits." *Carver v. Westinghouse Hanford Co.*, 951 F.2d 1083, 1086 (9th Cir. 1991), *cert. denied*, 505 U.S. 1222 (1992).

Both sides agree that the Group Insurance Contract and Certificate of Coverage are a part of the LTD Plan document (Opp. at 12; Reply Br. at 3). Plaintiff argues, however, that the SPD is not a part of the LTD Plan. This order agrees. The Supreme Court has stated that "summary documents, important as they are, provide communication with beneficiaries about the plan, but that their statements *do not themselves constitute the terms of the plan* for purposes of [Section] 502(a)(1)(B)." *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1878 (2011) (emphasis added); *accord Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1165 (9th Cir. 2012).

In addition, plaintiff argues that the Claims and Appeals section is not a part of the LTD Plan because the section specifically states that it is not a part of the Group Insurance Certificate and was not properly adopted as an amendment to the policy (PRU039; Opp. at 14–15). *See Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154 (9th Cir. 2001). Indeed, a cursory review of the Claims and Appeals section does not reveal whether the document was intended to be a part of the LTD Plan. Accordingly, there is a genuine issue of material fact about whether the Claims and Appeals section is a part of the LTD Plan, and accordingly, what proper standard of review applies. Accordingly, defendants' motion for summary judgment is **DENIED**.

**2.    DISCOVERY.**

Both sides may engage in limited discovery on the following two issues: (1) whether the Claims and Appeals section is part of the LTD Plan, (2) plaintiff's claim that a structural conflict of interest affected Prudential's decision to deny plaintiff's claim for long-term disability benefits because Prudential is both the claims administrator and the payor (Opp. at 17). *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 930 (9th Cir. 2012); *accord Caldwell v. Facet Retiree Med. Plan*, 2014 U.S. Dist. LEXIS 46998, at *13–14 (N.D. Cal. Apr. 3, 2014) (Judge William Alsup). The Court invites a jointly-proposed protective order to govern discovery in this action.

**CONCLUSION**

For the reasons stated above, defendants' motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

Dated:  May 22, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9